UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| FAIRON N. BROWN & DONNA BROWN ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| ) | CIVIL ACTION NO. 15-cv-00467-JL |
| WELLS FARGO HOME MORTGAGE A/K/A ) | |
| WELLS FARGO BANK, N.A. AND ) | |
| FEDERAL NATIONAL MORTGAGE ) | |
| ASSOCIATION ) | |
| ) | |
| ) | |
| Defendants. ) | |

MOTION TO STRIKE AFFIDAVIT OF SHAE SMITH IN SUPPORT OF WELLS FARGO'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff moves to strike portions of Mr. Smith's Affidavit in support of Wells Fargo's and FNMA's Motion for Summary Judgment because (1) Mr. Smith lacks personal knowledge of the facts contained in paragraphs 2, 3, 6, 7 and 8 of the Affidavit; (2) Mr. Smith's Affidavit fails to satisfy the hearsay exception in Rule 803(6), (3) the records upon which Mr. Smith's Affidavit relies are not trustworthy under Rule 803(D) and (4). Mr. Smith's Affidavit is in conflict with the testimony of the 30(b)(6) designated deponent that Defendants produced in this case.

<u>STATEMENT OF THE CASE</u>

On March 6, 2017, the Plaintiffs, through their attorney, sent a Notice of Deposition to Wells Fargo Bank, N.A., hereinafter Wells Fargo, and Federal National Mortgage Association, hereinafter FNMA, requesting the deposition upon oral examination of both Wells Fargo and

1

FNMA by such one or more of its officers, directors, managing agents, engineers, and other persons who consent to testify on its behalf, as pursuant to Fed. R. Civ. Proc, 30(b)(6). A copy of each of these notices is attached hereto as Exhibits A and B. The 30(b)(6) Notices contained relevant definitions and designations. The examination was requested with respect to the following subject matters, among other things:

2.   In connection with any and all documents required under Reg B and/or Reg X to be sent to a borrower and/or mortgagor, each and every step carried out by a person or computer or other electronic device of Wells Fargo between the time that each such document is first requested to be mailed (and its content) and the actual placement of that document into the control of the US Post Office or other carrier. The information above shall be limited to the period between January 1, 2014 and December 31, 2015.

3.   The manner in which one could determine the date that any document that is required by Reg B and/or Reg X to be sent to borrower and/or mortgagor has been placed in the control of the US Post Office or other carrier, such as a post mark date. The information above shall be limited to the period between January 1, 2014 and March 17, 2017.[1]

---

[1]   Plaintiff's designations likewise requested that the designee testify to the other relevant subject matters, to wit:

1.   Any and all information pertaining to any and/or all of Defendants' (i) internal written loss mitigation procedures, mortgage servicing procedures and/or Reg B notice requirements, with date of enactment, (ii) steps taken by Defendants to implement those internal loss mitigation procedures, mortgage servicing procedures and/or Reg B notice requirements (iii) Defendants' actual loss mitigation procedures, mortgage servicing procedures and/or Reg B notice requirements carried out by its personnel; (iv) all evaluations and monitoring data as well as reports summarizing or advising Defendants of corrections required for its loss mitigation procedures, mortgage servicing procedures and/or Reg B notice requirements by the CFPB, (v) all enforcement actions taken by CFPB against Defendants under Reg X and/or Reg B, (vi) the name, title and contact information of all personnel of Defendants involved in loss mitigation,(vii) all communications or contacts between any one or more of the Plaintiffs and/or Defendants about Plaintiffs Mortgage, indebtedness, loan or its modification, including any and all attempts to provide a loss mitigation option (viii) all information, loan notes, and screen shots in control of Defendants by between or among Defendants and about Plaintiffs mortgage, loan and/or its modification, including any and all attempts to provide a loss mitigation option; (ix) all information concerning the referral of plaintiffs' loan to foreclosure by Defendants, as well as the

*See* Exhibits A and B.

On April 10, 2017, Wells Fargo and FNMA produced Rebecca Black as their 30(b)(6) designated witness pursuant to the above notices. Ms. Black testified as to how, when and by whom the information and copies of documents found in Wells Fargo's system of record were generated.

Mrs. Black testified that when the underwriter decisions a file, the underwriter does not physically type the decision letter, does not physically see the typed decision letter and does not physically mail the decision letter.

For example, when the underwriter enters the decision into her workstation, PG 22, line 6 through line 23,[2] a copy of the decision letter is automatically system generated and can be viewed in the document retention system (not when the letter is actually generated). PG 24, line 9 through line 11. There is also a letter log within the "MSP" system that contains information allegedly about if and when the letters have been sent. PG 24 line 9 through line 14. The information in the MSP system is also system generated automatically and is likewise triggered only when the underwriter renders the decision (not when the letter is later mailed).

---

commencement of, carrying out of and/or conducting of the foreclosure; (x) any and all information that reports, records or relates to the defendants' loss mitigation procedures in response to an oral application made by a borrower under both Reg X and Reg B, whether said application was complete or incomplete, as well as (xi) any and all the contacts between Plaintiffs and Defendants concerning the Mortgage and/or Foreclosure, and any and all attempts to evaluate and/or actual evaluations by Defendants of Plaintiffs' loss mitigation application, whether oral or written, whether complete or incomplete.

The information above shall be limited to the period between January 1, 2014 and December 31, 2015. Exhibits A and B.

[2]   The citation "PG   .line   ", as used herein refers to the page and line of the transcript of the April 10, 2017 deposition of Andrea Black in the case. Likewise, the citation "Id.", as used in footnote 4 and on page 12 hereof, refers to the page of the transcript of the April 10, 2017 deposition of Andrea Black in the case.

These automatically system generated records are those that are relied upon by Wells Fargo associates.

Despite these system generated records, the underwriter has no idea whether the letter has in fact been generated or mailed. The decision letters are not generated or mailed from the physical location that the underwriter is sitting in. Ms. Black does not even know the specific location from which the decision letters are generated and mailed. PG 23.

More than that, none of the system records are generated by information entered into the system by those who personally know if and when the letters are actually generated or actually mailed. Those who physically generate and mail the actual letter have no access to and do not make any entries into the Wells Fargo's system of record used by the underwriters.

On April 13, 2017, Well Fargo submitted an Affidavit of Shae Smith in support of its motion for summary judgment. *See* a copy of the Affidavit attached hereto as Exhibit C.

In that affidavit Mr. Smith states that he is a Vice President of Loan Documentation and a current employee of Wells Fargo. *See* Exhibit C, paragraph 3. Mr. Smith also states that "[t]he matters set forth in [his] Affidavit are true and accurate based upon [his] review of business records kept by Wells Fargo Bank, N.A. ("Wells Fargo") in the ordinary course of business." Exhibit C, paragraph 2. In paragraph 5, Mr. Smith states that "the following documents", attached to the affidavit, "are true and accurate copies of documents maintained in the Fairon Brown's loan file." And in paragraph 7, Mr. Smith describes and attaches documents that "are excerpts of Wells Fargo's servicing notes for Plaintiff's loan." Exhibit C, paragraph 5.

In paragraph 6, he states, "Furthermore, as part of its loan servicing business practice, Wells Fargo keeps record of servicing information, including, information relating to communications with borrowers and loss mitigation, the date letters are mailed, and contemporaneously inputs notes regarding the servicing of the loan." Exhibit C, paragraph 6. And in paragraph 8 he states, "The "Churn Letter" identified on the Letter Log as sent on or about August 18, 2015 and August 4, 2015, identify when the denial letters dated August 3, 2015 (Exhibit 5) and August 17, 2015 (Exhibit 6) were mailed to Mr. Brown."  Exhibit C, paragraph 8.

As fully discussed below, Mr. Smith's affidavit and the facts asserted therein, especially those facts asserted in paragraphs 6 and 8 thereof, are inadmissible.

A.  <u>Paragraphs 6 and  8 of Mr. Smith's Affidavit should be stuck as inadmissible because the  affiant lacks personal knowledge.</u>

Federal Rule of Civil Procedure 56 states that affidavits filed in support of summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4);   Fed.R.Civ.P. 56(e)(1); *see also* Fed.R.Evid. 602.  "An affidavit not in compliance with Rule 56 can neither lend support to, nor defeat, a summary judgment motion." *Paniaguas v. Aldon Cos.,* No. 2:04-CV-468-PRC, 2006 WL 2568210, at *4 (N.D. Ind. Sept. 5, 2006) (citing *Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1148-49 (7th Cir. 1989); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989)).  "It is black letter law that hearsay evidence cannot be considered on summary judgment." *Davila v. Corp. de P.R. Para La Difusion*

*Publica*, 498 F.3d 9, 17 (1st Cir. 2007). Therefore, an affiant must have first-hand knowledge of the facts sworn to in an affidavit and cannot testify to a belief. *Quinones v. Houser Buick*, 436 F.3d 284, 291 (1st Cir. 2006). An affidavit must be based on the personal knowledge of the affiant, not on information provided by someone else, and must show the basis for the affiant's knowledge. *Hoffman v. Applicators Sales & Serv., Inc.,* 439 F.3d 9, 16 (1st Cir. 2006).

Paragraphs 6 and 8 of Mr. Smith's affidavit do not qualify as statements made upon personal knowledge because they contain conclusions based on the work of others and recite conclusory allegations, rather than facts. Within the four corners of his affidavit, Mr. Smith failed to establish his personal knowledge that the August 18, 2015 and August 4, 2015 letter, or any of the documents referred to in his affidavit, were actually sent and/or mailed to Mr. Brown. Specifically, Mr. Smith has no personal knowledge about Wells Fargo's loan servicing business actions as they related to Mr. Brown. And he has no personal knowledge if and when the "Chum Letter" referenced in paragraph 8 of his Affidavit was generated or mailed to Mr. Brown.

Without such personal knowledge, Mr. Smith's affidavit is inadmissible. Cf. *Nimco Real Estate Associates v. Gregory G. Nadeau, C.A. 16-cv-406-JD (Opinion No. 2017 DNH 056).*

B.  <u>Despite Mr. Smith's Lack of Personal Knowledge, Paragraphs 6 and 8 of Mr. Smith's Affidavit are still inadmissible because they consist solely of hearsay that does not come within any of the hearsay exceptions</u>

Even if Mr. Smith lacked personal knowledge, paragraphs 6 and 8, could arguably be admissible if the statements therein came within any of the hearsay exceptions. For instance,

6

Mr. Smith's affidavit could be admissible if it relied upon "business records" that satisfied Rule 803(6). However, Rule 803 (6) does not help M. Smith.[3]

The admission of such business records requires a multi-part showing involving the timing of the record's creation, how it was "kept" or maintained, and whether making the record was the regular practice of the creating business, organization, occupation or calling the question. Fed.R.Evid. 803(6)(A)-(C).

Most importantly, in regards to business records relied upon, Rule 803(6)(a) requires that the affiant affirmatively establish that *"the record was made at or near the time by — or from information transmitted by — someone with knowledge."*

Wells Fargo fails to satisfy this burden. Ms. Black testified that

> Q    So there is no way you can say that that log was made by someone with personal knowledge of the physical mailing at or near the time of the physical mailing?
>
> A    I cannot attest to that. PG. 92, line 7 thru line 11.

Without this foundation supplied by Wells Fargo, the information and copies of documents in Wells Fargo's computer, including the information and copies of documents contained in Mr. Smith's affidavit, do not satisfy the business records requirements and as such should not be considered as competent evidence. Nothing in Mr. Smith's affidavit contradicts Ms. Black's testimony regarding this issue..

---

[3]    Rule 803(6) provides an exception to the hearsay rule for records " of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the records."

C.  Even if Rule 803(6) applied, paragraphs 6 and 8 of Mr. Smith's affidavit should still be stricken because Wells Fargo's system of record was inherently untrustworthy.

Rule 803(8), provides that where "the source of the information or the method of or circumstances of preparation indicate lack of trustworthiness," a business record remains precluded as untrustworthy. *See also Masello v. Stanley Works, Inc.*, 81 Fed.R.Serv.3d 174, 825 F.Supp.2d 308 (2011).

The evidence of mailing of these so-called business records is "untrustworthy." Not only were these records not created in the system by entries made by a person with personal knowledge of the same, but Wells Fargo did not have a risk management system in place to determine if any of their notices to borrowers were in fact returned to Wells Fargo because those notices proved undeliverable. Even if a Borrower told Wells Fargo that the notice(s) were never delivered to him or her Well Fargo did not have a risk management system in place to determine if the notice(s) were in fact returned or not. Where a bank creates such records without any risk management system to determine if that information is reliable, unreliable or just plain inaccurate, the records within that system are inherently untrustworthy.[4]

---

[4] Ms. Black also testified that she did not know the how, when and where the decision letter was physically generated and then placed in the hands of USPS. Id. at 28. Ms. Black stated that she has no idea how or where this physical mailing took place. Id. at 91. And that she is not aware whether the information in the system as to whether or not something is mailed is done by or at the time the person physically puts the letter in the envelope. Id. at 91-92. She also testified that those who physically generate and mail the letter have no access to the system she uses. Id. She further testified that there is no way that she could say that the log was made by someone with personal knowledge of the physical mailing at or near the time of the physical mailing. Id. at 92. And that she has no personal knowledge of whether a document is physically mailed. Id. at 111-112.

She also testified that she had no idea what systems the bank used to keep track of returned mail or to test the extent to which due to internal bank error, letters had been returned as undeliverable. Id. at 115-116. She added that her system did not contain this information. She had no idea who would know or what systems are used to

D. <u>Mr. Smith was not designated as a 30(b)(6) witness and should not be allowed to submit an affidavit now.</u>

Rule 30(b)(6) requires an entity served with a deposition notice to " designate one or more ... persons who consent to testify on its behalf ... about information known or reasonably knowable to the organization." Fed.R.Civ.P. 30(b)(6). As this language indicates, an entity producing a witness for a Rule 30(b)(6) deposition must ensure that he or she has been educated on what the entity, as a corporate personage, " knows" or could reasonably find out. *See Briddell v. St. Gobain Abrasives Inc.*, 233 F.R.D. 57, 60 (D.Mass.2005); *Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 36 (D.Mass.2001) (collecting cases).

The testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the organization not of the individual deponents. *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.1996). "If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation." *Id.*; *see also Medic Alert Foundation v. Corel Corp.*, 43 F.Supp.2d 933, 942 n. 2 (N.D.Ill.1999) (a party's rule 30(b)(6) expert witness "is competent to testify to matters within the company's knowledge, not only to those within her personal knowledge").

---

track this.  She testified directly that to the best of her knowledge, no one in the bank, who had personal knowledge of the generation and mailing of notices, had or could make any entry into the bank's system of record at or near the time that the physical mailing took place. Id. at 113-116.

She also stated that she has had borrowers say they never received a letter. Id. at 92. Regardless of the borrower's protests, in the 4 ½ years that Ms. Black had been working at Wells Fargo no one with relevant knowledge ever called her to say that any mail sent by her had been retuned as undeliverable. Id. at 113-116.

The bank did not produce any other deponent under plaintiffs' 30(b)(6) designations to answer these questions.

There is only one limitation to this obligation: it extends only so far as the party issuing the deposition notice has honored its own obligation to "describe with reasonable particularity the matters for examination." Fed.R.Civ.P. 30(b)(6).

Plaintiff's designations clearly satisfied this requirement of reasonable particularity. Testimony was requested about the following subject matters

> 2.    In connection with any and all documents required under Reg B and/or Reg X to be sent to a borrower and/or mortgagor, each and every step carried out by a person or computer or other electronic device of Wells Fargo between the time that each such document is first requested to be mailed (and its content) and the actual placement of that document into the control of the US Post Office or other carrier. The information above shall be limited to the period between January 1, 2014 and December 31, 2015.
>
> 3.    The manner in which one could determine the date that any document that is required by Reg B and/or Reg X to be sent to borrower and/or mortgagor has been placed in the control of the US Post Office or other carrier, such as a post mark date. The information above shall be limited to the period between January 1, 2014 and March 17, 2017. *See also*, footnote 1 infra.

Wells Fargo produced Ms. Black as a witness in response to the Plaintiff's 30(b)(6).

Mr. Smith was not designated as the Defendants' 30(b)(6) deponent; nor was he named as someone with personal knowledge of the information requested. Rather, Ms. Black was.

Wells Fargo cannot now submit Mr. Smith's affidavit, in contradiction to Ms. Black's testimony, regarding the specific information requested in the 30(b)(6) notice. Wells Fargo cannot simply ignore the testimony of its 30(b)(6) witness by introducing paragraphs 2, 3, 6, 7 and 8 of Mr. Smith's affidavit despite Ms. Black's testimony. Therefore, these paragraphs must be stricken.

E.  <u>Paragraphs 2, 3, 6, 7 and 8 of Mr. Smith's Affidavit must be struck because they are in conflict with testimony provided by Wells Fargo's 30(b)(6) designated deponent, Ms. Black.</u>

In his Affidavit, Mr. Smith states that the information and documents that he relies upon are Wells Fargo's "business records."

Under Rule 803(6)(a) business records are defined as records made at or near the time that the event was carried out and made by someone with personal knowledge of the same. However, Ms. Black specifically testified that Wells Fargo's records and information did not satisfy this requirement. Ms. Black testified that none of the relevant information or documents contained in Wells Fargo's system of record were business records because none were entered into that system at or near the time that they were created or mailed by a person with personal knowledge of the same.

For example, Ms. Black testified that the copies of decision letters and the information in the letter log are automatically populated when the underwriter enters a decision into the system of record (not when the letters are generated. PG 27, line 4 through line 11. The date that is generated both on the letter and in the log is the date that the underwriter entered its decision into the system (not when it is physically mailed). PG 28, line 17 through line 23.  No one other than the underwriter affects this information. Mrs. Black is not aware of anyone who

physically generates the letter or mails the letter, nor does she know any such person that can cause information to be populated into the letter log. PG 28, line 1 through line 4.[5]

She also testified

- **that *those who physically generate and mail the letter have no access to the system of record that she uses.  Id.***
- ***that she has no personal knowledge of whether a document is physically mailed. Id. at 111-112 and***
- ***that she could not attest that entries into the letter log were made by someone with personal knowledge of the physical mailing at or near the time of the physical mailing.  Id. at 92.***

Mr. Smith's affidavit is in clear conflict with Ms. Black's testimony.  Mr. Smith's affidavit asserts that the letter log and the letters contained within the MSP system constitute "business records." Exhibit C.

Wells Fargo cannot now proffer testimony in contradiction with Ms. Black's, their 30(b)(6) designee without explanation*.  See Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc.*, 447 F.3d 105, 110 (1st Cir. 2006)(affidavit disregarded because it was in conflict with earlier deposition answers and proffering party had offered no credible explanation for the subsequent change in testimony). Since the facts in Mr. Shea's affidavit clearly contradict the testimony of Wells Fargo's designated deponent on whether the proffered exhibits constitute

---

[5] *See also* PG 29 which contains a summary of this process.

"business records," paragraphs 2, 3, 6, 7 and 8 of his affidavit (and the documents referred to therein) should be stricken. *See Exhibit C.*

WHEREAS, the plaintiff respectfully requests that paragraphs 2, 3, 6, 7 and 8 be stricken from Mr. Smith's affidavit and such information as is right and just.

RESPECTFULLY SUBMITTED

PLAINTIFFS
BY THEIR ATTORNEY
SHERIDAN LAW OFFICES OF LONDONDERRY, NH

*/s/William Christopher Sheridan, Esq.  05/11/17*
William Christopher Sheridan, Esq.
50 Nashua Road, Suite 102
Londonderry, NH 03053
603-674-9359
Wsheridan21@hotmail.com
BNH 01435

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of May, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system and sent by first class mail to all non-registered parties. Parties may access this filing through the Court's CM/ECF system.

*/s/William Christopher Sheridan*
William Christopher Sheridan