```
              UNITED STATES DISTRICT COURT
               DISTRICT OF NEW HAMPSHIRE
```

Fairon N. Brown and Donna Brown

  v.             Civil No. 15-cv-467-JL
                 Opinion No. 2017 DNH 145

Wells Fargo Home Mortgage
A/K/A Wells Fargo Bank, N.A., and
Federal National Mortgage
Association

**MEMORANDUM ORDER**

  This action turns on whether the defendants satisfied the obligations imposed on them by regulations promulgated under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq. and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 et seq., after the mortgagor requested a loan modification because they fell behind on their mortgage.

  In 2014, Fairon and Donna Brown requested a loan modification from Wells Fargo Home Mortgage, which serviced their mortgage loan on behalf of its owner, Federal National Mortgage Association ("FNMA").  Wells Fargo offered a loan modification, but the Browns, having found employment in the meantime, cured the default and did not accept the modification. A year later, having again fallen behind on their payments, the Browns again sought a loan modification.  Wells Fargo denied this second application and subsequently foreclosed.

The Browns then filed this action against Wells Fargo and FNMA, alleging that Wells Fargo violated RESPA by foreclosing during pendency of a modification request and violated the ECOA by failing to notify the Browns of any decision on that request before the foreclosure sale. The Browns sought damages as well as injunctive relief for these violations. The Browns also brought claims under New Hampshire's Unfair, Deceptive, or Unreasonable Collection Practices Act ("UDUCPA"), N.H. Rev. Stat. Ann. § 358-C:3, and the duty of good faith and fair dealing. Upon defendants' motion, the court dismissed the Browns' claims under the UDUCPA and the duty of good faith and fair dealing for failure to state a claim. Brown v. Wells Fargo Home Mortgage, 2016 DNH 102, 13-16. The court also dismissed the Browns' claims for post-foreclosure injunctive relief under RESPA as unavailable under the statute. Id. at 8-9. Finally, to the extent the Browns challenged the validity of the foreclosure, the court dismissed those claims as barred by N.H. Rev. Stat. Ann § 479:25, II. Id. at 6-7. Thus, only the Browns' claims under RESPA and the ECOA remain. By dint of those claims, the court has subject-matter jurisdiction over this matter under 28 U.S.C. §§ 1331 (federal question). The defendants now move for summary judgment on both remaining claims. The defendants have demonstrated that there is no dispute of material fact that Wells Fargo met the obligation

imposed on it by Regulation X, 12 C.F.R. § 1024.41, promulgated under RESPA, with respect to one loan modification request, which it did when it offered the Browns a loan modification in 2014. Thus, it was not obligated to comply with that regulation again when faced with the Browns' second modification request. Similarly, the defendants have demonstrated that no dispute of material fact exists over whether they notified the Browns of action taken on their 2015 loan modification request as required by Regulation B, 12 C.F.R. § 1002.9, and the ECOA. Though the Browns attempt to raise a question as to whether Wells Fargo actually mailed such a notice, their admission that they received one notification letter in August 2015 precludes a finding of any such dispute. The court, therefore, grants the defendants' motion.

I.  **Applicable legal standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit

under the applicable law." DeAndrade v. Trans Union LLC, 523 F.3d 61, 65 (1st Cir. 2008) (internal quotations omitted).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the factual record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Once the moving party has properly supported [her] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [she] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [her] favor." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex, 477 U.S. at 322-35). "[T]he non-moving party 'may not rest upon mere allegation . . . but must set forth specific facts showing that there is a genuine issue for trial.'" Braga v. Hodgson, 605 F.3d 58, 60 (1st Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). In analyzing a summary judgment motion, the court draws "all reasonable inferences that may be extrapolated from the record . . . in favor of the non-movant," but may disregard "allegations of a merely speculative or conclusory nature." Serra v. Quantum Servicing, Corp., 747 F.3d 37, 39-40 (1st Cir. 2014). "As to issues on which the [nonmovants] bears the ultimate burden on proof," as the Browns do here, they "cannot

4

rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Kenney v. Floyd, 700 F.3d 604, 608 (1st Cir. 2012).

## II. Background

The Browns mortgaged their home in Litchfield, New Hampshire, in 2004.[1]  After several assignments not relevant here, Wells Fargo assigned the mortgage to FNMA on June 26, 2015,[2] but continued to service the loan.[3]  Mr. Brown became unemployed in 2014 and by May of that year had missed more than one mortgage payment.[4]  Around the same time, he sought a loan modification from Wells Fargo.  In response, on August 4, 2014, Wells Fargo offered to modify the Browns' loan, sending them a loan modification agreement and a letter informing them that, to accept the loan modification, "[a]ll loan documents are due within 14 days" of that date.[5]  The Browns did not sign or return the loan modification documents, thus rejecting the modification

---

[1] Defendants' Mot. Ex. A (doc. no. 40-2).

[2] Defendants' Mot. Ex. D (doc. no. 40-5).

[3] Smith Aff't (doc. no. 40-6) ¶ 4.

[4] Brown Dep., Defendants' Mot. Ex. F (doc. no. 40-7) at 24-25.

[5] Smith Aff't Ex. 2 (doc. no. 40-6).

5

offer.[6]  Wells Fargo therefore denied their modification request in November 2014.[7]

By June 2015, the Browns were again in arrears and, on June 29, 2015, again sought relief from Wells Fargo.  During a telephone call with the servicer on that day, the Browns made an oral application for a 6-month forbearance in light of Mr. Brown's unemployment.  A month later, the Browns again contacted Wells Fargo.  During that telephone call, Wells Fargo informed the Browns that their application was incomplete and that they would need to submit additional documentation to complete it.[8]  The Browns, in response, submitted documents to Wells Fargo.

Wells Fargo denied the Browns' June 29, 2015 request for loan modification.  On August 3, 2015, Wells Fargo sent a letter to the Browns with the following statement:

---

[6] The Browns contend that they "never rejected nor accepted the August proposed loan modification." Defendants' Mot. Ex. G (doc. no. 40-8) at 6.  They did not do so, they explain, because "by the time Fairon had received the proposed loan modification Fairon had secured or was about to secure new employment," and the loan modification "became moot when Fairon promptly cured the existing default." Id.  They do not, however, contest the facts most relevant here:  that Wells Fargo considered their modification application and that they received the modification offer.

[7] Smith Aff't Ex. 3 (doc. no. 40-6).

[8] Brown Dep. (doc. no. 40-7) at 40-41.

6

> We're responding to your recent request for mortgage assistance. At this time, we are unable to move forward with an evaluation of your current situation.
>
> We have reviewed this mortgage account in the past. Based on that review and the recent information you have provided to us, we have determined there has not been a sufficient enough change in your circumstances for us to conduct another review.[9]

Wells Fargo then sent the Browns a second letter, dated August 17, 2015, informing them that "[a]t this time, we are unable to move forward with an evaluation of your current situation," and that if the Browns' "mortgage has been or will be referred to foreclosure, that process may move forward now."[10] FNMA foreclosed on August 26, 2015.[11] The Browns did not move to enjoin the foreclosure and subsequently filed this action in November 2015, almost three months after the foreclosure sale.

### III. **Analysis**

As discussed supra, the Browns retained two claims after the court granted, in part, the defendants' motion to dismiss. Specifically, the Browns contend that Wells Fargo violated Regulation X, 12 C.F.R. § 1024, promulgated under RESPA, 12 U.S.C. §§ 2601 et seq., by commencing foreclosure proceedings

---

[9] Smith Aff't ¶¶ 5, 8; Ex. 5 (doc. no. 40-6). The Browns claim that they never received this notice. As discussed infra, the court credits that claim.

[10] Smith Aff't ¶¶ 5, 8; Ex. 6 (doc. no. 40-6).

[11] Defendants' Mot. Ex. H (doc. no. 40-9).

7

and conducting the foreclosure sale prior to acting on the Browns' June 29, 2015 request for a loan modification. The Browns further contend that Wells Fargo violated the ECOA, 15 U.S.C. § 1691(d), and Regulation B promulgated under that statute, 12 C.F.R. § 1002.9, by failing to provide notice of adverse action taken on that request. The defendants move for summary judgment on both counts, arguing both that the plaintiffs' claims fail as a matter of law and that the plaintiffs are unable to prove any damages resulting from either claim. Before turning to the substance of the defendants' motion, the court addresses two issues with respect to the plaintiffs' response.

    First, the plaintiffs filed a four-paragraph objection that woefully fails to satisfy Local Rule 56.1(b).[12] Under that rule, "[a] memorandum in opposition to a summary judgment motion shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the adverse party contends a genuine dispute exists so as to require a trial." LR 56.1(b). The plaintiffs' objection lacks any statement of material facts, let alone any record citations. Instead, through a footnote, the plaintiffs improperly "incorporate[] . . . as if fully stated in this opposition"

---

[12] See Obj. (doc. no. 46).

(1) their motion to strike the affidavit of Shae Smith, a Vice President of Loan Documentation at Wells Fargo, which the defendants submit in support of their summary judgment motion[13]; (2) Mr. Brown's affidavit filed in support of their objection[14]; and (3) "the arguments presented in plaintiff's [sic] objection to defendants [sic] motion to dismiss, as well as in plaintiff's [sic] supplemental sueply [sic] to the same."[15]  This amounts to an impermissible attempt to circumvent this court's Local Rules "aimed at enabling a district court to adjudicate a summary judgment motion without endless rummaging through a plethoric record."  Puerto Rico Am. Ins. Co. v. Rivera-Vazquez, 603 F.3d 125, 131-32 (1st Cir. 2010) (incorporating other filings by reference does not constitute compliance with local rule requiring objections to summary judgment to address material facts in dispute).  The court declines to engage in "the sort of archeological dig that [such] anti-ferret rules are designed to prevent," id. at 131, and may therefore "deem[] admitted" all "properly supported material facts set forth in [Wells Fargo's] factual statement," LR 56.1(b); see also Fed. R. Civ. P. 56(e)(2).  It need not necessarily do so to resolve this

---

[13] See Mot. to Strike (doc. no. 43).

[14] Document no. 45.

[15] Document nos. 13, 19.

motion, however, because its analysis turns on facts to which the plaintiffs affirmatively agree.

Second, the plaintiffs have moved to strike the affidavit of Shae Smith[16] submitted in support of defendants' motion for summary judgment challenging (1) the affiant's personal knowledge as to whether any notices in the Browns' file were actually sent to the Browns[17] and (2) the admissibility of the exhibits attached to the affidavit and paragraphs 6 and 8 of the affidavit as inadmissible hearsay not subject to the business-record exception.  The court denies that motion.

The Browns' admission that they received two of the notices attached to Smith's affidavit -- those dated August 4, 2014, offering the Browns a loan modification in response to their first application, and August 17, 2015, denying the Browns' second application[18] -- vitiates any dispute over whether those specific notices were sent to the Browns.  That is, because the notices were received -- facts the Browns affirmatively admit -- there can be no dispute that they were sent.  This renders moot the plaintiffs' motion to strike Smith's affidavit for lack of personal knowledge of the sending as to those two notices.

---

[16] Document no. 40-6.

[17] Mot. to Strike (doc. no. 43) at 5-6, 9-13.

[18] Brown Aff't (doc. no. 45) ¶¶ 2-3, 5.

Furthermore, because Wells Fargo does not offer the August 4, 2014 or August 17, 2015 letters for the truth of the matters asserted therein, their contents do not amount to inadmissible hearsay and defendants therefore need not establish that they fall within the exception for business records under Rule 803(6) to establish their admissibility.  See Fed. R. Evid. 801(c) ("'Hearsay' means a statement that . . . a party offers in evidence to prove the truth of the matter asserted in the statement").  As discussed infra, Wells Fargo instead relies on the August 4, 2014, notice to demonstrate that the Browns received a response to their 2014 loan modification application and thus that Wells Fargo was relieved of any obligation under Regulation X to consider a second modification, as opposed to the substance and content of that notice.  Likewise, Wells Fargo relies on the August 17, 2015 letter to demonstrate compliance with Regulation B and the ECOA by providing notice to the plaintiff of its denial of their 2015 loan modification application.  In other words, the two notification letters were not offered to prove the truth of their content, but rather as proof that they were sent -- that the notifications occurred.  And the Browns admit that they did.

The Browns' admission that they received the notifications also undermines another of their arguments -- that paragraphs 6 and 8 of the Smith Affidavit fail to establish or provide

admissible evidence, either under a hearsay exception or through first-hand knowledge, that the notices were sent. This argument, separate from their hearsay challenge to the notices, has some merit, as far as it goes. See Fed. R. Evid. 803(6), 602. But it makes no difference here. Again, the Browns admit that they received the August 4, 2014 and August 17, 2015 notices, which allows the permissible inference that the notices were sent. Thus, any argument concerning the shortcomings of the Smith Affidavit or other evidence on this point misses the mark.

Finally, to the extent the Browns contend that the Smith Affidavit fails to lay appropriate foundation for the admissibility of the remaining notices, as discussed infra, the fact that the Browns received the August 4, 2014, and August 17, 2015 notices is sufficient to defeat their claims. The remaining notices, admissible or not, have no bearing on the summary judgment analysis. The plaintiffs' motion to strike is, therefore, denied.

### A. RESPA claim

Regulation X, 12 C.F.R. § 1024, promulgated under RESPA, 12 U.S.C. §§ 2601 et seq., requires mortgage loan servicers to follow certain procedures after receiving a borrower's loss mitigation application. It may be enforced "pursuant to

section 6(f) of RESPA," 12 C.F.R. § 1024.41, which permits recovery for "any actual damages to the borrower" and a plaintiff's costs and fees incurred in a successful action, 12 U.S.C. § 2605(f)(1)-(3).

The Browns have alleged that Wells Fargo violated Regulation X, and specifically 12 C.F.R. §§ 1024.41(f)(2) and (g), by commencing foreclosure proceedings and conducting a foreclosure sale prior to acting on the Browns' June 29, 2015 oral modification application.[19]  As the defendants point out, however, "[a] servicer is only required to comply with the requirements of [Regulation X] for a single complete loss mitigation application for a borrower's mortgage loan account." 12 C.F.R. § 1024.41(i).[20]  "In other words, a borrower may not bring an action for violation of [Regulation X] if that borrower has previously availed herself of the loss mitigation process." Mangum v. First Reliance Bank, No. 4:16-CV-02214-RBH, 2017 WL 1062534, at *3 (D.S.C. Mar. 21, 2017).

The Browns do not dispute that Wells Fargo considered their loss mitigation application in 2014 and offered a loan

---

[19] See Compl. (doc. no. 1-1) ¶¶ 49-53.

[20] This version of Regulation X is presently in effect, and has been at all times relevant to this action.  The regulations have since been amended, but that amendment does not take effect until October 19, 2017.

modification.[21]  They concede that they received the notification that their application was granted, as well as Wells Fargo's proposed loan modification agreement.[22]  They do not argue that the 2014 loan modification process violated Regulation X.[23]  Thus, there is no dispute of material fact over whether Wells Fargo complied with its obligations under Regulation X with respect to one loan modification application from the Browns.  Nor do the Browns argue that their decision to reject the modification offer and cure the default in 2014 obligated Wells Fargo to comply with the regulations with respect to a second modification application, contrary to the clear language of the regulation.

Accordingly, because the Browns have identified no material fact in dispute supporting the position that Wells Fargo was

---

[21] Indeed, the Browns' objection does not address this argument at all.  See Obj. (doc. no. 46).

[22] Brown Aff't (doc. no. 45) ¶¶ 2-3.

[23] Mr. Brown suggests, also in his affidavit, that Wells Fargo's notice granting the Browns' modification application failed to comply with Regulation X because it "fail[ed] to inform [them] that [they] have a right to appeal the offer of loan modification within 14 days."  Id. (citing 12 C.F.R. §§ 1024.41(h)).  Even were this argument properly before the court in the plaintiffs' objection memorandum, which it is not, the plaintiffs have not alleged that they were in any way damaged by this alleged violation of Regulation X.  Indeed, it is unclear to the court what damages the plaintiffs may have suffered when they had, as Mr. Brown affirms, already cured their default before receiving the modification offer.  See id.

obligated to comply with the requirements of Regulation X with respect to a second modification after granting a modification in 2014, the court grants the defendants' motion for summary judgment as to the Browns' RESPA claim.

### B.   Equal Credit Opportunity Act (Count 2)

The plaintiffs also bring one claim under the Equal Credit Opportunity Act, which requires a creditor, "[w]ithin thirty days . . . after receipt of a completed application for credit," to "notify the applicant of its action on the application." 15 U.S.C. § 1691(d)(1). Regulation B, promulgated under the ECOA, similarly requires creditors to provide timely notice of action taken on incomplete applications.[24]  See 12 C.F.R. § 1002.9(a)(1)(ii).  The Browns contend that they received no notice of Wells Fargo's decision on their June 29, 2015 loan modification application in violation of Regulation B.

The parties agree that Brown's June 29, 2015 oral request for forbearance constituted an oral loan modification application.  They further agree that, in accordance with Regulation B, Wells Fargo notified the Browns that their application was incomplete and requested additional information

---

[24] The Browns do not dispute Wells Fargo's characterization of their application as incomplete.  The court, accordingly, adopts that characterization, though its analysis would be substantially the same were the application considered complete.

during a July 29, 2015 telephone call with Mr. Brown.[25]  See 12 C.F.R. § 1002.9(c)(3).  "If the application remains incomplete" after such oral notice of incompleteness, Regulation B obligates the creditor to provide written notice, again within 30 days, "of action taken[] in accordance with [§ 1002.9(a)]; or of the incompleteness, in accordance with [§ 1002.9(c)(2)]."  Id. § 1002.9(c)(1).

A creditor taking the former course, as Wells Fargo argues it did here, must "notify an applicant of action taken within . . . 30 days after taking adverse action on an incomplete application . . . ."[26]  Id. § 1002.9(a)(1)(iii).  Wells Fargo, moving for summary judgment, contends there can be no dispute -- based on the August 17, 2015 notice -- that they notified the

---

[25] Though the Browns initially contended that Wells Fargo violated Regulation B by failing to inform them of missing information within 30 days, they conceded at oral argument on the defendants' motion to dismiss that this telephone call, though initiated by the Browns, satisfied that requirement.  See Brown, 2016 DNH 102, 11-12.

[26] If the creditor takes an "adverse action," it generally must provide the applicant with "a statement of reasons for such action from the creditor."  Id. § 1002.9(a)(2); see also 15 U.S.C. § 1691(d)(2).  Wells Fargo need not have done so in this case because "a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default," as was undisputedly the situation here, does not constitute an "adverse action" triggering that requirement.  15 U.S.C. § 1691(d)(6).

16

Browns of their decision not to review the Browns' June 29, 2015 application.[27]

The Browns, arguing that Wells Fargo failed to provide any notice of action taken on the Browns' June 29, 2015 request for loan modification, "den[y] receipt" of all of the "so-called denial letters . . . during the 2015 calendar year . . . ."[28] They challenge the reliability of Wells Fargo's records, arguing that "[a]t the very least, there is a question of fact as to whether or not those letters were in fact mailed and/or delivered."[29]  But Mr. Brown admits that he received the notice dated August 17, 2015.[30]  No other evidence submitted to the court suggests other than that Wells Fargo sent, and he received, at least that notice.  Accordingly, even crediting the Browns' position that they never received several of Wells Fargo's letters, it is undisputed that Wells Fargo sent, and

---

[27] See Smith Aff't Exs. 5, 6 (doc. no. 40-6).

[28] Obj. (doc. no. 46) ¶ 4.  The Browns nowhere argue that the August 17, 2015 notice would not have satisfied the timeliness requirement of 12 C.F.R. § 1002.9(a)(1)(iii), that is, that Wells Fargo provide notice within 30 days of its decision.  They argue only that they never received any notice.

[29] Id.

[30] Brown Aff't (doc. no. 45) ¶ 5 (Brown "did receive [the August 18, 2015 notice] . . . sometime between August 20 and August 23 of 2015.")

they received, notice of Wells Fargo's decision not to evaluate their application.[31]

Regulation B required Wells Fargo to "notify [the Browns] of its action on [their] application." 15 U.S.C. § 1691(d)(1). Wells Fargo has adduced evidence supporting their compliance with that provision. The Browns concede that they received notice of Wells Fargo's decision and have not identified any evidence creating a dispute as to that fact. Accordingly, the court grants the defendants' motion for summary judgment on the Browns' ECOA claim.

## C. Damages

The defendants also move for summary judgment on both claims on the grounds that the plaintiffs cannot present admissible evidence sufficient to establish they have suffered "any actual damages" under either RESPA or the ECOA.[32] Because

---

[31] To the extent that the Browns intend to argue that the August 17, 2015 notice fails to satisfy the requirements of Regulation B because "it does not say that it is a denial," see Brown Aff't (doc no. 45) ¶ 5, the Browns have waived that argument by failing to develop it. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). The Browns cannot raise an issue of material fact through a single sentence in an affidavit ostensibly incorporated by reference into a woefully underdeveloped objection, which does not so much as mention the issue.

[32] Mem. in Supp. of Mot. for Summary Judgment (doc. no. 40-1) at 9-22.

the court concludes, supra Parts III.A and III.B, that the defendants are entitled to summary judgment on both claims, the court need not, and therefore does not, address the availability or sufficiency of the plaintiffs' damages evidence.

## IV. Conclusion

For the reasons set forth above, the defendants' motion for summary judgment[33] is GRANTED and the plaintiffs' motion to strike[34] is DENIED. The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: July 26, 2017

cc: William C. Sheridan, Esq.
    Michael R. Stanley, Esq.

---

[33] Document no. 40.

[34] Document no. 43.